Our next case of the morning, which is Vernon Hill v. TD Bank, Commerce Bank Court. Let's wait just a minute to clear things out. Okay. Mr. Jacobs? May it please the Court, my name is Edwin Jacobs. I represent the appellant plaintiff, Vernon Hill, and I've reserved three minutes for rebuttal. My focus is the If we award for the plaintiff, does this bypass federal approval? The judge's response after argument was, quote, the best way to answer that question is to tell you, section 359 of which you are all experts now, states that the bank cannot pay money to Mr. Hill without approval of the federal regulators. In other words, no. That's what the jury instructions say though. All the jury instructions are replete with that exact statement. Here is the problem with it. The jury question is pitting a judgment of an Article III court against the federal regulation. That's what they're doing. The jurors are saying Well, did anyone request a jury instruction in the regular jury instruction that said for purposes of, you know, your deliberations, there is a distinction between a federal judgment and approval by a regulator, you know, drawing a distinction that they might, you know, be able to make. But as I read the regular jury instructions, if a federal statute of regulation prohibits a party from complying, then that party will be excused. The event that makes performance impossible, da-da-da, in order to determine whether the defendant was, quote, able, da-da-da, you must know what the regulation provides. I mean, it seems to me it's extremely consistent with the jury instruction. The problem is the jury was asking the wrong question. They should have said, could, you know, should the bank have certified? That, I mean, that If they stuck to the evidence, that's what they should be deciding. Should the bank have certified? Now, of course, that's not before us, is it? Yes, it is. This instruction, this direction to the jury goes far beyond the evidence. This was a breach of contract case. All of the irrelevant evidence accumulated between mid-June of 2007 and the couple weeks before trial in 2013, all of the evidence. This jury is asking about the consequence of a verdict for the plaintiff in the future. What will happen in the future, out of this time frame, if we give a verdict to the plaintiff? If you look at this regulation, there's not a sentence in it, there's not a clause, there's about a federal judgment, the collection of federal judgment. This is an Article III court and its judgment is co-equal with the executive or the legislative, and I believe this would be executive, this regulation. There is nothing that says, there is no case, there is no decision by this trial court or any court which says this regulation somehow trumps the judgment of an Article III court, and that is what the jurors were asking about. They were asking if this afternoon, we deliver a verdict for $17.2 million... This happens all the time, that jurors are misguided, they're not focused, okay? And courts, in responding to the jury, are at times imprecise, but you, I think, have to look at the entirety of the charge, and when you do, he's given them the correct admonition on this point earlier in the instructions, and when you look at them as a whole, I mean, I get it, you have the temporal proximity here, and I think that's your strongest argument, you know, the question comes out, the instruction goes back, and there's a verdict soon afterwards, but when you look at them at a whole, how can we reverse just on this? Here's how. Moments before delivering this answer, moments before, on May 21, 2013, this is a trial judge talking, he was referred back to a conference with all the regulators, which was conducted on April 23, 2012. Are you going to give us a reference in the record? Yes, it's page 125, lines 3 through 15. Okay. He was referred back by me to a conference one year earlier, April 23, 2012, where lawyers, seven of them, representing the FDIC, the OCC, and the Federal Reserve, were on a speakerphone with the judge, defense counsel, and plaintiff's counsel, and here's how the judge remembered that conference. This is the judge speaking. Quote, I think we left it that they're going to have to intervene in the case if they want to stop it if that ever happened. Talking about a plaintiff's verdict. The judge went on and said, whether or not a judgment in the United States District Court being enforced against the bank as a result of the actual getting any cash, I don't know. I've not had the opportunity to rule on that. That's the problem. Let me ask you this. Shouldn't there have been a jury instruction that said, notwithstanding the existence of the federal regulation, if you determine that the bank did not indeed have a reasonable basis after sufficient examination, dah, dah, dah, to deny this certification, then Mr. Hill could win damages against the bank for the amount that he lost as a result of its failure to certify. I mean, isn't that the theory? That was basically the breach of contract claim. So all this jury had to do was decide. Where in the instructions were they told that they could do that? I think in the instructions the court did say ordinarily this would be simple and straightforward. Ordinarily the bank admits there is a contract. The bank admits they have an obligation to pay him. The bank admits they got an obligation to file the applicable certificate. But they're defending saying it's impossible that we do it. The case was about whether that was true or false, that it's impossible. The plaintiff argued they're just throwing up their hands and they're claiming, remember, this same bank, through its corporate representative, filed a sworn interrogatory claiming they did file the application. They did. And the federal judge, the federal judge, very clearly identified that as a misrepresentation to the court. Quote, the defendants have misinformed the court about having filed the golden parachute application. Last year they said they did it and it was pending and the court accepted that. They never corrected that misrepresentation. That's A-287-288. After that, the same representative, in a deposition a couple years later, said, no, we never filed one. After he says that, by the way, this is March 2011, by the way, we have not even decided if we could file one. And there was more. Then that same representative filed what he called an application saying that he thinks Mr. Hill violated every single disentitling provision of the golden parachute statute. He changed that, reduced it to one-third of the provisions. This bank was all over the board on their impossibility defense. There were literally eight different stories about impossibility. Their defense was dying on the vine until the judge answered this question, which was not about the impossibility defense. It was about... The judge's response was the proper response to the questions because the question was about bypassing federal approval. They were headed in the wrong direction. They shouldn't have been focused on that so much. They should have been focused, again, as I say, on the ability of the bank to get the certification. But what he asked, what he answered was accurate and was what the jury instruction said. Now, somebody should have said, Your Honor, please give this supplemental instruction saying that's not to say that if you believe the bank didn't properly deny the certification, you could get damages. Judge, I have to disagree with you because it was clear to all. I read you what the judge just said. There was no pretrial motion which resolved this. There was no briefing. There was no order. There is nothing in this case and there's no reported decision that says this instruction is correct. With all the briefing you've got, you've got over 120 pages of briefing here, and neither side has a case which addresses this issue either way. That answer to the jury is somewhere between incorrect as a matter of law and at least unsettled. The regulators said it. This is in that April 23 conference when the court asked the regulators, What are you regulators going to do if the plaintiff gets a judgment? The answer from the Federal Reserve was, I'm not sure we've ever encountered that situation. No matter how it comes about, there's going to have to be approval. And the court said, Yeah, but then the bank is operating under compulsion of a court to pay a judgment. And the Federal Reserve response, the FDIC response, we've never really encountered that situation. I'm not sure where we could go with it. Could you clear up something for me? Yes. It's been bothering me in this case from the very beginning. He could have self-certified. Yes. Is that not? Okay. You admit that. The IAP can always, I would call it self-certified, file his own application along with a statement saying, I didn't do any disqualifying acts. And he says throughout this, he didn't do anything wrong and is very clear what he says. Yes. Why didn't he? Here's why. Contractually, the bank was obligated to make the application including that statement that he is RIAP and he didn't do any of these disqualifying acts. As I argued below, and we prevailed on that, the court held the bank has to do it. If he, the IAP, were to do it, the Federal regulators would look at the application and say, well, you're an IAP looking to collect $17.2 million. Of course you're going to say that you didn't commit any of these acts. We have to have it from the bank. Well, what would happen if he had self-certified and it's clear that he made an agreement and he has a stipulation that he did do some things that were wrong? Not really. What you're referring to, I think, is a statement by Wojcik. Only a little bit. Wojcik, a high-ranking executive, was responsible for filing applications and Wojcik admitted having made some misrepresentations. Uh-huh. But that was not Mr. Hill's responsibility to file. These are branch applications for banks. Well, I'm still not sure why he didn't. He was waiting for the bank to certify? I mean, if he could have honestly self-certified, then wouldn't he have gotten his money? Wouldn't that meet the regulation? Our concern was then and is now that without the bank weighing in and confirming that he did not commit any disqualifying act, the application was going nowhere. Now, one more quote. Wasn't the agency obligated that if he would self-certify, then they would give their approval? Isn't that part of the regulation? Well, I've been in multiple... He could do a mandamus. It may take a mandamus eventually. Yeah, but why didn't... I mean, this is a lot of money, that issue. $17.2 million. By my measure, it is a great deal of money. Yeah, well, I mean, from the standpoint of a poor federal judge, we think it's a lot of money, too. I still don't understand why he didn't self-certify if he could have honestly and without any sanctions self-certified. And the simple answer is we knew we were not going to get approval unless the bank confirmed that in his tenure none of these disqualifying acts occurred. Why does it say that in the regulation? Does the regulation say... No, the regulation lets either. Let's either apply. The regulation lets either or both apply. Let me ask you this question. There's a point in the instructions where he says, the judge says, Ladies and gentlemen, the ability or inability of any defendant to pay a judgment that's entered against them is really not for you to be worried about. Just put that out of your mind. Now, I'm sure that's not the only instance where something like that is said. So doesn't that, quote, play into the notion that is strewn throughout our jurisprudence that you look at the entire jury instruction and that you don't take, you know, one isolated view, which is what we're doing here, and just say, oh, my God, that's the worst thing that ever happened. We've got to reverse because of that? That's a good question. That statement that you just read and the answer to this question is separated by one hour. The way that statement came about is in the last minute, literally, of my closing argument, I said something to the effect that the breach of contract amount is $17.2 million, which adds up to 2 tenths of 1 percent of the purchase price of the bank. That drew an objection from defense counsel. The judge's response to the objection from defense counsel is what you just read. He said to the jury, don't be concerned about the defense's ability to pay the judgment, in other words, hand over money. That's not what the jury asked. The jury was ready to hand over money. What the jury said is, if we give a judgment for 17.2 to this plaintiff, is that the end of it? Does he get paid? Or, on the other hand, is he then consigned to, as Judge Krugler put it, regulatory hell? And Judge Krugler used that exact term in the April 23 conference with the regulators. I'm not sure what your answer was to the question. He's going to get to that after I ask him another question. Okay, go ahead. My point is this. You obviously were there. Yes. You know about your prowess as a trial lawyer. Great. The point is this. Whether taken in the context in which you just provided it or taken as a whole, the point to the jury is you should not be concerned with what happens after you make a determination on the judgment. The exact opposite. You're a juror, and at 2 o'clock you hear the judge say, don't be concerned about whether a party can pay whatever money you order. Okay, I understand that. Now the jurors go and they talk for an hour and they're back. Alright, Judge, next question. If we rule in favor of the plaintiff for $17.2 million, does he bypass the federal regulators? In other words, does he get the money? And the judge says no. You've got to look at them in tandem like that. But there are two threads going on here. One is the impossibility in which the regulatory certification... That's the only thread, Judge. That's what the case is about. He said in his jury instructions, and it shouldn't have been about, stated in another way, the defense of impossibility is not available to a party who... If you really didn't try. When faced with an apparent impediment under contract throws up its hands, fails to make a reasonable effort to fulfill its contractual duties. So that's the parallel track. For all we know, the jury goes back and says, okay, so impossibility, maybe they've shown impossibility because they need that federal approval. But look at what this instruction says. Defense of impossibility is not available to him. And you know what? The bank didn't really... The bank did everything it needed to do. We have testimony of what they knew. So they did everything they needed to do. So the plaintiff loses. How do we know that they didn't in fact adhere to the instruction? We're speculating as to how the jury digested this answer. My point is they shouldn't have had this answer. They should have been told... But it's a correct answer. There is no bypassing. There is no bypassing. Judge, I gotta disagree with you. There's no case that says that. You've got an Article III court and its judgment. How is that trumped by a federal regulation? The regulation deals with voluntary payments. It deals with two things. It deals with agreements to pay and actual voluntary payments for an agreement... But the federal judgment wouldn't be... It'd be on breach of contract. Exactly. That's my point. The federal judgment wouldn't be agency, you have to approve. It would be breach of contract. That is the point. So there's the issue then. What does the Federal Reserve or the FDIC, the OCC is out of it, when they see this federal judgment on breach of contract, what do they do? Do they say our reg trumps it or our reg doesn't trump it? Judge Kugler envisioned them intervening. It's not even there. It's a failure to certify. It's a damage against the bank. The bank did a wrong thing. It has nothing to do with the regulation. Then it would bypass. If what you said is right, it would bypass. I don't want to argue with you. I'm agreeing with you now. It would bypass and he's telling them it wouldn't. So you're right. You're right. I'm right. There's two of us. Can we go home now? We'll hear from you on rebuttal. Let me ask one question. Yes. You have argued about the meaning of the word troubled with respect to the bank. We have. But that was decided by the court in the summary judgment motion. He did. And that order was not appealed from. Is that correct? No, I believe that is one of the points in our... Yes, that was a pre-trial order and we've appealed from that. I don't think it was in... I don't think it was appealed from. It's not in my notice of appeal. It's not in the notice of appeal. As far as I can tell. If you disagree with that, would you send a supplemental letter? We will. Thank you very much. I'll just put it on the record. Send a supplemental letter indicating where that was appealed within one week. Thank you so much. Thank you. May it please the court Mark Stansel for Appelese Commerce Bank and TD Bank. I'd like to subject the court's questions and likewise focus on the jury instruction issue. I think I'd like to start by correcting... Did you answer your view of the issue of the appeal of the summary judgment? I just cracked the notice of appeal about 40 seconds ago to look back. May I submit a letter as well? Yes, Your Honor. I think there's a misunderstanding. They're always helping. If I could, I'd like to focus on what I think are two misunderstandings about the impossibility of defense. It's been suggested by my opponent that the regulatory approval prong is irrelevant to the impossibility of defense. And that's simply not correct. 359.4 has two prongs. It says in A1 359.4 A1 says the regulator must determine that the payment is permissible and, as relevant here, A4 requires the certification. Both have to be done before the bank could pay. So it wouldn't be enough for the bank to make... Does the bank have to certify before Mr. Hill certifies? No, Your Honor. Either party, either the bank or the individual may make the certification. And if Mr. Hill certified then he would be and then nobody double-checks him to see if he's right? No, Your Honor. The regulators double-check that. And that's exactly the point. It's not the certification alone. The regular has to determine that it's accurate. Correct. And with respect to the bank's impossibility of defense, the bank could not cut that check until both of those boxes were checked. Someone makes a certification and the regulators say, okay, cut the check. So the impossibility of defense was both prongs. And to Your Honor's question about why didn't anybody request an instruction that says if you find that they could have made the certification then you award them damages? It's because that wouldn't be correct. The bank couldn't have paid him simply if the certification were made. The bank would have to then wait for regulatory approval. So both prongs would have to be satisfied. No, but if the jury found that the impossibility of defense wasn't available to him they found it was a breach of contract for the bank to fail to certify. In other words, they didn't exercise sufficient diligence? No, Your Honor, and this is a crucial point. The breach of contract is not the failure to certify. It is the failure to pay. The contract doesn't say anything about you must certify such and such. The contract says if I'm terminated you owe me this money. And in order to pay, there are two prongs. Certification and regulatory approval, which is why there was a jury instruction, and I'll quote this. This is on page 32 of the jury charge. It's the May 21 transcript. This is a charge to which Mr. Hill did not object. If you found the defendant is unable to obtain approval Wait a minute. I have jury instructions and I don't have a page 32. Those, I believe, Your Honor, are the jury instructions returned by the court before the charge conference. So I'm quoting from the jury instructions as the court read them to the jury verbatim. I think there may have been slight differences. Is it not in the appendix that we have? I don't believe this particular page is in the special appendix. But this is it. It's on the trial transcript May 21 at page 32 of that transcript. And it says if you found the defendant is unable to obtain approval from the regulators to pay plaintiff his severance payments then plaintiff is not entitled to damages. That's correct. Just stop for a second. Sorry. How do we  Oh, it is in the record, Your Honor. The transcript is part of the record. But was it submitted as part of the appendix in this case? That's what I'm talking about. I'll have to check, Your Honor. My notes have it as an appendix reference or we'd like it to be submitted so we have it. If it's not, I'll give you a letter that says here's where it is in our appendix. And if not, here it is. And this is what was given to the jury. Yes, Your Honor. So what I'm referring to something was filed 482, filed May 21 13 Okay. Docket 482? Yeah. Document 482. It's filed May 21 of 13. Okay. Well, I may be I'll do my homework and I'll get back to you right away. Yes. I'm confident what we will be able to show you is the jury was instructed on both prongs of regulatory both regulatory approval and certification with regard to impossibility. Because it would have to be. TD could not cut that check under 359.4 without both of those boxes being checked. So that's misimpression number one. I'd like to go to number two, which is, I think, how that jury question was interpreted. The district court did not read the jury question the way that my... So you're speculating now about how the jury took this? Well, I actually I agree with the district judge and here's what Judge Kugler said in the new trial motion. He said, I think it can be read, the thought to be an invitation to ignore 359's prohibition, and which would have been an impermissible conclusion by the jury. So he read the question, if we award for the plaintiff, does this bypass federal approval as saying, isn't regulatory approval irrelevant to what we're deciding? And the answer to that is an emphatic no. Because, again, there are two prongs to the impossibility defense. If you think the jury... The reasonable basis to believe wasn't really in the case? No, Your Honor. Both were defenses. Tiki had two ways that it could show impossibility. We couldn't certify because we had all this information of misconduct. And if we had certified, the OCC wouldn't have approved it. And I agree with Mr. Jacobs. The bulk of evidence at trial went to what kind of information we have, because it's obviously, you have only inference as to what the regulators would have decided. The OCC does not readily supply witnesses to testify as to what they would have decided had something happened. But the jury was certainly permitted to draw an inference that even if T.D. had made a certification that it couldn't have made, then the regulators would not have approved it. You mean if the impossibility wasn't an impossibility? It was impossible. It was doubly impossible, if you will, Your Honor. It was impossible because T.D. couldn't certify, and it was impossible because if T.D. had certified, the regulators would have said no. And I think that... And the regulators would have said no because the regulators believed that they thought that he had in fact done something improper. I forget the words. Yes, Your Honor, and if I could, I would direct the court to the consent order between the regulators and Mr. Hill, which is at A194, so the Appendix 194, and there are two appendices, but it's Appendix 194, and in that document, the OCC finds that Mr. Hill committed the very misconduct and insider abuses that would preclude a certification. Mr. Hill did not admit or deny critically, did not deny those findings. So was there evidence from which the jury could have inferred that even if the certification had been made, the regulators would not have approved it? Absolutely. And that's why when the question came out, the judge read it as are they confused about regulatory approval? But even if they weren't, even if the question was exactly as Mr. Jacobs has suggested, let's say they were speculating about what would happen in the hypothetical world in which the jury determined that TD could have made the certification, the regulators would have approved, they render a verdict, then what happens? If they were speculating about that, I think the district judge, who has wide discretion in the heat of the moment, did the exact right thing. He said in effect, if you're worried about regulatory approval, remember where regulatory approval is also relevant. It's relevant at the impossibility defense as well. Well then what was this case about? This nine days? It was all about misconduct at the bank, Your Honor. And the volume of evidence that TD had as to why it couldn't make the certification. And that was absolutely the focus of their proof at trial because it was overwhelming. And if you'll permit me, How would you have disproved the notion that as part of the determination that the regulators had to make, how was it attempted to be proved that the regulators would ever have determined that approval was appropriate? I think it would have been difficult for Mr. Hill to prove the regulators would have approved it in the face of this evidence. So there's a gotcha even if you show that the bank could have certified. It's not gotcha. It's just the two prongs under 359.4. But again Do you have any trial counsel? No, Your Honor. Mr. Tambusi tried this case. And I assume that was part of the argument that those two prongs. Yes, that's why the jury was instructed on this. And I don't want to suggest to the court that we gave those prongs equal weight. Absolutely. The bank had in its possession this information. The bank was positioned to put that proof on the directors, special counsel, all of these witnesses. So your point is this couldn't have been a better retort to their question.  this is exactly what would happen. Because no matter what they rule, it's going to be subject to federal regulator approval anyway. I don't think that's what the district judge was trying to say to the jury. But I think that is correct. And I think that's where Judge Kugler came out in the end. But I think he's reminding them of the dual prongs at 359.4. If they were looking at something irrelevant as what happens down the road, he turns them back and says, remember regulatory approval and certification are 359.4. And I think the fact that he just quotes the law back to the jury, the law they already had, is the most delicate way, if they're confused, to turn them back to how it's relevant. What would Mr. Hill's sanction have been if he self-certified incorrectly? Improperly? That's a delicate question, Your Honor. But he potentially would have been subject to 1001 prosecution for making a false statement if the regulators believed that he had lied to the government in making certification. But I'm not suggesting it's not my place to make that. I would like to just spend two minutes if this is a problem, if there was any error, it was undoubtedly harmless under any standard. Well, although you say that and then the jury comes back in an hour. The jury was only out for about two hours, Your Honor. Total? I believe they were out for an hour, came back for a question, out for another hour. It was not a hard case, respectfully, Your Honor, for the jury in light of all the overwhelming evidence on the certification prompt. So the question on certification, just look at that. Did the bank have a reasonable basis from which it could infer that there may have been misconduct? Let's start with the OCC order. OCC finds that he did a lot of bad things and Mr. Hill doesn't deny it. I think the case stops there on a harmless error analysis. But there's a lot more. There's a special litigation committee report that says this indemnification of Mr. Hill's wife's design firm was improperly handled. Mr. Hill himself refused to cooperate fully with that report, that investigation. So we have a bank saying, well, we have an executive who's being investigated, he refuses to cooperate. That itself gives rise to a reasonable basis to infer. There is assorted testimony about self-dealing or, I want to be very careful, related party transactions. Some were market rates, some weren't. Some were property disclosed. Mr. Hill himself admitted that he was that the bank had made materially misleading bank applications to the regulators. Was he responsible for them? He says he wasn't, but he has also testified, and the jury heard this, and that he was in charge of everything and kept his files close. And certainly the memo in which he made this concession, and this is a memo he wrote right before he was removed. There's only a few instances? Yes, but I'm not aware of an exception in the 359.4 of only a few instances of lying to the regulators. So that's its special appendix, pages 76 and 77. You'll find that admission where Mr. Hill says there were materially misleading bank branch applications. And finally, just to return to So what you're telling us is there really was impossibility? A hundred times over, yes, Your Honor. And if I could, just to return to something Judge Greenaway said, the concern that Mr. Hill is expressing now in this appeal is the jury was being asked to speculate about what would happen down the line. The jury was given that instruction and the way this went was there was an objection at closing to which the bank gave the following curative instruction. It said, the ability or inability of any defendant to pay a judgment that's entered against them is really not for you to be worried about. Then they went out and they came back and asked this question. I don't think we presume that the jury's memory fades after an hour even if there's a question later. I'm not touching that, Your Honor. And we've been here more than an hour but no, no. Let me ask you a question, though. I read this instruction to your colleague stated another way, the defense of impossibility is not available to a party who, when faced with an impediment to performing its obligations under contract, simply throws up its hands and fails to make a reasonable effort to fulfill its contractual duty was to pay. It had to make an effort to fulfill that, i.e. try to be able to certify. Yes. So if the jury found that it didn't fail, I mean that it didn't make reasonable efforts to certify so as to pay, they could have awarded him damages against the bank in the amount of what he lost out by virtue of their failure to do that. Could they not? I think elsewhere in the instructions they would have had to deal with the approval prong because Why? It's damages for failure to pay, Your Honor. To pay because they didn't exert reasonable efforts to pay. Couldn't they have found that? That would have been sustainable. Well, I mean, the easy answer is that's not this case, of course, because they did not find that but maybe I'll stop there then. I think that helps your case. In response to their specific question as to bypass, no. It doesn't bypass but there's this other line of breach of contract that's being pursued. I understand, Your Honor. And that's why you will. Yes. The Court has no further questions. Thank you. And you will, within a week, let us know your view on the appeal of the summary judgment motion and give us the appropriate jury instructions that were given to the jury. Would Your Honor prefer the transcript pages with the entire jury charge? We'd like them in paper in a supplemental appendix as part of this case. Yes, Your Honor. May it please the Court. When the jury asked in that question if we award for the plaintiff, that can only mean one thing. And that means if we reject the impossibility defense. That's the only way the plaintiff gets an award. Now all these facts that counsel was just arguing about, the SLC report, for example, he neglects to tell you that it was independent directors and Mr. Hill was exonerated of everything except one thing, which the directors were incorrectly advised on and Mr. Hill was exonerated of that in the appellate court. So he did nothing wrong but these facts that he's talking about are all facts that occurred between mid-2007 and the weeks before trial which is what the case was about. This case was not about what might happen tomorrow morning if Mr. Hill takes his federal judgment to the regulators and says, now I'm going to be paid by the bank and you've got nothing to do with it. It was no business of the jury what might or might not happen between Mr. Hill, equipped with his federal judgment and the regulators. Now, some of the best evidence of that, again, comes from Judge Kugler, where he says quote, he says to me, if you're right and the bank still can't pay it the bank, I'm sorry, if they're right if they're right, the bank and the bank still can't pay it, the bank is of course going to move to stay the judgment that you get and they're going to invite the FRB to intervene and you'll be in regulatory hell. So a truthful answer would have been that. But there should have been no answer at all because it was collateral. Let's change the world as we know it for a moment. At trial, you win. The next day you have a judgment, you want the money, right? You don't have to go to the federal regulators? I do not. I have a valid federal court judgment and I would try to collect it. If the bank doesn't like that or the federal regulators don't like that they will move to intervene, which is exactly what Judge Kugler said they would have to do. He would have to do it. Judge Kugler said, quote, the federal judgment, it's either good or it's not. It's either going to have to stand up to that statute or it's not. That's the state of the law today in 2014. There is no case that says a federal judgment is not collectible because you got it on a breach of contract because your employer bank ignored a responsibility in your contract. There is no such case or capable counsel would have given it to you. That's exactly what I'm saying. To answer you directly, I would take that federal judgment and as Judge Kugler hypothesized on April 23 and he said to the regulators, what are you going to do when federal marshals show up at the bank and they start to empty out your accounts? They said, we don't know. We've never had this before. How do you win this case? What's the theory? The theory of my appeal or my trial. They come back and say, well, they didn't exert sufficient efforts. Simple. You say, but that doesn't matter because they still wouldn't have succeeded. That's where I got hurt. Because the regulators have to determine and they would not have granted it. Judge, that's where I got hurt because the federal judge is telling the jurors even if you go ahead and rule for the plaintiff, it doesn't matter. It's academic. It's still up to the regulators. That's where I got hurt. But isn't that great? They have to make a determination. And he basically agreed that there were problems. No, he did not. Look at it in this context. You say, how would I win the case? How do you lose this case? If I've got this same bank... Tell me how you win the case. They had eight different stories. The first of which is, we already filed the application and we're waiting to hear back. That's pure nonsense. And the federal judge took them to task and said it's nonsense. When a jury hears that, that for a year and a half they had a federal judge misinformed... Let's go to the regulator. If they had certified... If they being whom? The bank. The bank had certified. What would have happened? By that you mean, had they filed an application accompanied by the negative criteria of quillum certification. If the bank had done that, I have every reason to believe it would have been approved. Because the bank is disgorging 17.2 million dollars. And IAP is looking to get 17.2 million dollars. Well, but they may be doing it just because they don't want to be sued by Vernon Hill. Hello? Apparently it didn't bother them. That's their best way out. Is to pay the money here instead of in legal fees or at a trial. And then the regulators, you're saying there was sufficient proof before the jury that the regulators would say, oh, but of course of course pay Mr. Hill. That was... No, no. Judge, I'm glad you got into that area. There was not one word of testimony. Not one word of testimony from either party during this nine day trial about the tension between a federal judgment for Mr. Hill on breach of contract and the regulators. No expert witness. No fact witness. If you could look at this as a matter of fact, not a word of testimony. Excuse me? With the consent order, do you really need one? Well, what makes you think they would, rhetorically, what makes you think they would respect the consent order? If they might not. See, the regulators didn't know the crux of this is, the heart of it is the regulators, when put on the spot by a federal judge, what are you going to do if Mr. Jacobs gets a judgment? We don't know. We never had to do this. And Judge Krugler said, well, there's going to be post-judgment proceedings. You'll move to intervene to stay it. Why didn't he tell that to the jury? Why didn't he say, well, since you asked, we had a conference with the regulators, they don't know what they're going to do. If you do go ahead and rule for Mr. Hill, then they may intervene and there will be further proceedings. Why is it an equally reasonable inference that the jury heard that and said, you know, these regulators are pain in the tushes. You know, we think that Mr. Hill has proven his case and we're going to give him the money. You know, they asked if they could and they were told no. They asked, they asked, Judge, the question is, if we award for the plaintiff, does this bypass federal approval? I can't read that any other way than does he get the money? And the judge tells them no. So the jurors say, what the hell are we doing here? Well, he gets the money if the regulators will approve. And they might have said, you know, this answer put a fact into the jury room that didn't belong there. What might happen in the coming weeks or months if there is a confrontation between the plaintiff's federal judgment and the regulators? But the only way for you to win is if there's only one reasonable inference to draw from the question. And what I've suggested, I think, is that there are at least two, there could be more, there are at least two reasonable inferences to be drawn by the statement of Judge Kugler to the jury. And one of them is yep, the bank's hands are tied, but that has nothing to do with you. I don't know how they would understand. Remember, these are the same jurors who an hour before were told don't worry about the ability of anybody to make good to pay a judgment. They just heard that an hour before. Now they want to know, well, if we give them the money, if we award $17.2 million to the plaintiff, is that the end of the case? Does that bypass this federal approval issue? And he tells them they can't pay anyway. Now if you're a jury, you say, okay, well, this truly is impossible. We're here nine days, we're about to give them $17 million, and the judge says they can't pay. It truly is impossible. He put an issue into the jury room which deals with post- judgment collateral proceedings which are totally unsettled from the mouths of the regulators and the Thank you very much. The case is well argued. We would like supplemental letters and a supplemental appendix if needed within one week, please.